```
           IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| H. SAGA INTERNATIONAL, INC., | ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) No. 21-cv-2085-SHM <br> ) |
| REPUBLIC MEDICAL FINANCE, LLC, AND REPUBLIC MEDICAL FINANCIAL SOLUTIONS, LLC, | ) <br> ) <br> ) <br> ) |
| Defendants. | |

## ORDER

This is a contract case. Before the Court is Defendants Republic Medical Finance, LLC, and Republic Medical Financial Solutions, LLC's March 24, 2021 Motion to Dismiss (the "Motion"). (D.E. 11.) For the following reasons, Defendants' Motion is **GRANTED**.

### I. Background

H. Saga International, Inc. ("H. Saga") is a California corporation with its principal place of business in Tennessee. (D.E. 9.) Republic Medical Finance, LLC ("RMF") and Republic Medical Financial Solutions, LLC ("RMFS") are limited liability companies with the same sole member, Rafael Martinez. (D.E. 1.)

In March 2017, Martinez approached H. Saga with a business opportunity: H. Saga would factor the accounts receivable from

Mobile Cardiac Imaging, LLC ("MCI"), and RMF and RMFS would act as servicer between H. Saga and MCI. (D.E. 9.) On November 1, 2017, RMF, MCI, and H. Saga signed a Factoring Agreement that incorporated a Services Agreement, to which RMFS was a party. (D.E. 9-2.) Under the Factoring Agreement, Defendants would first audit MCI's accounts and suggest accounts for H. Saga to purchase. (D.E. 9.) Once H.Saga agreed to purchase the accounts, RMF and RMFS would transfer the purchase price from H. Saga to MCI. (Id.) After H. Saga had purchased the accounts, RMF and RMFS would collect payments made by account debtors and send the payments to H. Saga. (Id.)

On November 13, 2017, H. Saga sent $551,127 to RMF to purchase several MCI accounts that RMF had audited. (Id.) RMF then transferred $465,750 to MCI, an amount less than MCI thought it would receive. (D.E. 9-5.) MCI never transferred to RMF any payments made by account debtors and sought to terminate the deal. (D.E. 9.) RMF told H. Saga it would negotiate with MCI to return the initial payment, but MCI refused. (Id.)

On May 3, 2018, H. Saga and RMF, jointly represented by the Harris Shelton Hanover Walsh law firm, sued MCI in the Chancery Court of Shelby County, Tennessee, alleging breach of contract, conversion, unjust enrichment, tortious interference with a contract, and fraud. (D.E. 11-2.) On September 28, 2018, the Chancery Court entered default judgment in favor of H. Saga and

2

RMF, awarding over $12,000,000, including $10,000,000 in punitive damages. (D.E. 11-3.) On June 27, 2019, MCI moved to set aside the default judgment. (D.E. 11-4.) MCI attached to its motion a wire statement showing that RMF had transferred $465,750 to MCI. (D.E. 9.) On August 20, 2019, H. Saga alone opposed MCI's motion to set aside the default judgment. (D.E. 11-5.) On August 21, 2019, Harris Shelton Hanover Walsh moved to withdraw as counsel for RMF. (D.E. 11-6.) On November 1, 2019, RMF, with new counsel, opposed MCI's motion to set aside the default judgment, but did not object to setting aside the punitive damages. (D.E. 11-7.) On December 15, 2020, the Court set aside the punitive damages, but left in place the award of $760,769.02 plus interest to H. Saga and $1,300,377 plus interest to RMF. (D.E. 11-8.)

On December 18, 2020, H. Saga demanded $1,328,567.75 from RMF based on unpaid accounts receivable from MCI. (D.E. 9-6.) The same day, H. Saga sued Rafael Martinez, RMF, and RMFS in the Chancery Court. (D.E. 1-3.) On February 5, 2021, Defendants removed to this Court. (D.E. 1.) On February 19, 2021, Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (D.E. 7.) On March 10, 2021, H. Saga amended its complaint, alleging breach of contract, promissory estoppel, and procurement of breach of contract. (D.E. 9.) On March 24, 2021, Defendants filed the present Motion

3

asserting, inter alia, that res judicata bars Plaintiff's claims. (D.E. 11.)

## II. Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

H. Saga is a California corporation with its principal place of business in Tennessee. Defendants are both limited liability companies. For the purpose of diversity, unincorporated entities, including limited liability companies, have the citizenship of each partner or member. Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). Rafael Martinez is the sole member of both RMF and RMFS. Martinez is a citizen of New Jersey. (D.E. 1.) There is complete diversity of citizenship. Plaintiff seeks $2,314,557.18 for its procurement of breach of contract claim alone. (D.E. 9.) The matter in controversy exceeds $75,000. The Court has diversity jurisdiction.

State substantive law applies to state law claims in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the Court need not conduct a choice-of-law analysis sua

4

sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties have assumed that Tennessee substantive law governs Plaintiff's claims. (See D.E. 11-1; D.E. 12.) The Court will apply Tennessee substantive law.

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss is designed to test whether the plaintiff has pled a cognizable claim and allows the Court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

When evaluating a motion to dismiss for failure to state a claim, a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides, in light of its

judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Although res judicata is commonly raised as an affirmative defense, it is "clearly established that res judicata can also be raised by motion." Westwood Chemical Co., Inc. v. Kulick, 656 F.2d 1224, 1228 (6th Cir. 1981). Courts often dismiss claims under Rule 12(b)(6) because the claims are barred by res judicata. See, e.g., Rushford v. Firstar Bank, N.A., 50 F. App'x 202, 203 (6th Cir. 2002); Thompson v. United States, 8 F. App'x 547, 549 (6th Cir. 2001); Link v. Sumner Cnty. Jail, 2010 WL 1138928, at *2 (M.D. Tenn. Mar. 19, 2010).

**IV. Analysis**

    **A.  Res Judicata**

Federal courts sitting in diversity must afford state court judgments the same preclusive effect they would receive in the

6

rendering state. Calaway ex rel. Calaway v. Schucker, 395 F. App'x 251, 254 (6th Cir. 2010). Tennessee recognizes the traditional doctrine of res judicata, which bars "a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit." Creech v. Addington, 281 S.W.3d 363, 376 (Tenn. 2009). A party asserting res judicata must show that "(1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action." Lien v. Couch, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998) (citing Lee v. Hall, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)). The party raising res judicata carries the burden of proof. Boyce v. LPP Mortg. Ltd., 435 S.W.3d 758, 768 (Tenn. Ct. App. 2013).

It is uncontested that the first two elements are satisfied. The Chancery Court for Shelby County is a court of competent jurisdiction. In the prior action, the Chancery Court granted default judgment, later amended the default judgment, and no party appealed. The judgment disposed of all issues and is a final judgment on the merits. See Roberts v. Vaughn, 2009 WL 1608981, at *4 (Tenn. Ct. App. June 10, 2009) ("[D]efault

7

judgment is a judgment on the merits for the purposes of res judicata.").

### B. Both Proceedings Involve the Same Parties or Their Privies

In Tennessee, privity relates to the subject matter of the litigation, not necessarily to the relationship between the parties themselves. State ex rel. Cihlar v. Crawford, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000). Res judicata extends both to the parties to a prior action and those with an "identity of interest," or "a mutual or successive interest to the same rights." Id.; see Hutcherson v. Lauderdale County, Tennessee, 326 F.3d 747, 759 (6th Cir. 2003). H. Saga and RMF were parties to the prior suit. RMFS was not. However, RMFS and RMF share an identity of interest.

Rafael Martinez is the sole member of both RMF and RMFS. He sought business opportunities on behalf of the companies together. RMF and RMFS are both parties to the agreements at issue in this and the prior case. They acted jointly as servicer between H. Saga and MCI. In the present suit, H. Saga brings its claims against RMF and RMFS collectively. RMF and RMFS share an mutual interest in the same rights set forth in the Factoring Agreement and the Services Agreement. There is an identity of interest between RMF and RMFS. RMFS is a privy of RMF.

### C.    Both Proceedings Involve the Same Cause of Action

Suits involve the same cause of action when "they arise out of the same transaction or a series of connected transactions." Creech, 281 S.W.3d at 381. To determine whether cases arise out of the same transaction, courts apply a logical relationship test. Roberts, 2009 WL 1608981, at *20. Under that test, claims arise out of the same transaction if the issues of law and fact raised by the claims, and the evidence used to support or refute them, are largely the same. Id.

Plaintiff's current claims are for breach of contract, promissory estoppel, and procurement of breach of contract. Plaintiff argues two distinct breaches under its breach of contract claim. First, H. Saga alleges that Defendants breached by paying MCI less than the full purchase price under the Factoring Agreement. (D.E. 9.) Second, H. Saga argues that Defendants breached § 4.23 of the Factoring Agreement. (Id.) Section 4.23 provides:

> In the event that Servicer approves an Account for purchase by Buyer as described above and such Account remains uncollected for ninety (90) days after the respective due date,, (sic) Buyer  shall declare the invoice immediately due and payable by the Servicer, and Servicer shall apply the Collateral held by Servicer with respect to Seller to immediately repurchase the Account from Buyer for an amount equal to the face amount of such Account (less any payments received by Buyer on such Account from the Account Debtor), together with interest thereon at the rate of TWO PERCENT (2%) per 30 days from the date of the assignment of such

9

> Account to Buyer by the Servicer.  Any security
> reserve held by Buyer for such Account shall be
> released only in accordance with Section 4.3, and
> Buyer shall in all events also be entitled to and
> shall retain its Buyer's fee on the Account.

(D.E. 9-1.)

Both claims for breach of contract arise out of the same transaction as the prior action.  That case focused on MCI's nonperformance under the Factoring Agreement.  H. Saga's first claim argues that Defendants caused MCI's nonperformance because RMF transferred less money than required under the Factoring Agreement.  MCI's nonperformance was the precise issue in the previous suit.  The same facts underlie both cases; both suits rely on the same agreements and emails as evidence.  The two claims are logically related and arise out of the same transaction.

H. Saga's second breach of contract claim also arises out of the same transaction.  Section 4.23 allows H. Saga to repurchase from RMF any account that remains uncollected for 90 days after the due date.  Plaintiff now demands under § 4.23 that Defendants repurchase the accounts that H. Saga purchased.  That dispute is the reason RMF and H. Saga brought the first suit:  MCI failed to provide RMF with the account receivables that H. Saga purchased, preventing RMF from collecting any funds for H. Saga.  In their complaint in the prior action, RMF and H.

Saga alleged that, "[s]ince the execution of the Factoring Agreement, no payments have been received from any of the factored accounts. Further, no funds have been remitted to REPUBLIC as the servicer, and accordingly, no funds have been forwarded from REPUBLIC to HSAGA." (D.E. 7-2.) The facts and evidence in the prior claim are identical to those in this suit. The claim in this suit arises out of the same transaction as the prior action.

Plaintiff's promissory estoppel claim also arises out of the same transaction. H. Saga alleges that, after MCI refused to return the purchase price, Defendants told H. Saga that they would negotiate a buyout with MCI. Defendants did not obtain a buyout. H. Saga claims it reasonably and detrimentally relied on Defendants' representations. (D.E. 9.) At the heart of Plaintiff's claim is MCI's nonperformance. Defendants sought a buyout because MCI did not comply with the Factoring Agreement. The complaint in the prior action included RMF's renegotiation attempt. (D.E. 9.) ("REPUBLIC advised Defendant MCI that a new Financing Agreement could be negotiated but demanded that Defendant MCI first return the funds previously wired to MCI from REPUBLIC. Defendant MCI refused to return the funds of $465,750.00 stating that the funds had already been spent and used to satisfy other obligations.") (Id.) The claims and the

11

evidence relied on here logically relate to the previous case. The claims arise out of the same transaction.

Plaintiff's procurement of breach of contract claim also arises out of the same transaction.  H. Saga alleges that Defendants paid MCI less than required under the Factoring Agreement, inducing MCI to breach the Agreement.  (D.E. 9.) Again, Plaintiff's claim focuses on the circumstances surrounding MCI's nonperformance.  That issue was litigated in the previous suit, and H. Saga received a judgment.  The claims arise out of the same transaction.

### D. The Present Claims do not Rely on New Facts

Under Tennessee Law, the doctrine of res judicata extends only to the facts at issue as they existed at the time the original judgment was rendered. Creech, 281 S.W.3d at 381.  Res judicata does not prevent a re-examination of the same question between the same parties where in the interval the facts change or new facts occur that might alter the legal rights or relations of the litigants. Id.  "Facts occurring after an adjudication may give rise to a new cause of action that may be on the same subject matter as the first action but would not be barred by res judicata." Regions Financial Corp. v. Marsh USA, Inc., 310 S.W.3d 382, 394 (Ct. App. Tenn. 2009).  However, the new facts exception to res judicata does not extend to newly discovered evidence, which is "simply evidence of facts as they existed at

12

the time of the original trial." Short v. Short, 1994 WL 315902, at *4 (Ct. App. Tenn. July 5, 1994). A second cause of action may be appropriate when a "plaintiff is initially unaware of the existence of a cause of action due to the defendants' own concealment or misrepresentation, whether fraudulent or innocent[.]" Creech, 281 S.W.3d at 382.

H. Saga argues that the two sets of claims do not arise out of the same transaction because the present claims stem from evidence unknown to H. Saga when it filed the previous suit. H. Saga argues that it discovered "Defendants' wrongdoing when MCI moved to set aside the default judgement . . . [and MCI presented] emails showing Defendants had deducted nearly $80,000 from the purchase funds as a fee and transferred the balance to MCI as the purchase price." (D.E. 7.)

Plaintiff's present suit is based on recently discovered evidence, not new facts. Defendants' alleged wrongdoing existed before this case and the prior action were filed. Defendants' transfer of the purchase price precipitated the prior case, because MCI did not perform after receiving the funds. No facts changed, only Plaintiff's awareness of them. Plaintiff does not argue that Defendants concealed or misrepresented the facts. Even if Defendants had concealed facts, Plaintiff concedes that it discovered them when MCI moved to set aside the default judgment. (Id.) Plaintiff learned of the facts while the prior

13

action was ongoing.  See Creech, 281 S.W.3d at 382 (holding res judicata barred claims on facts discovered while previous suit pending); Regions Financial Corp., 310 S.W.3d at *394.  H. Saga could have fully and fairly litigated the present claims during the prior action.  See Creech, 281 S.W.3d at 382.  The new facts exception does not apply.  The two suits arise out of the same transaction or occurrence.  Res judicata bars H. Saga's claims.

## V. Conclusion

Defendants' Motion to Dismiss is **GRANTED.**

So ordered this 13th day of October, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE